RAMP & PISANI, LLP
60 Westervelt Avenue
P.O. Box 249
Tenafly, New Jersey 07670
201-567-8877
fred@rampandpisani.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

DEBORAH EHLING,

                Plaintiff,                Civil Action No.

     v.                                  COMPLAINT AND JURY DEMAND

MONMOUTH-OCEAN HOSPITAL SERVICE
CORP, d/b/a MONOC, VINCENT ROBBINS,
individually, AND STACY QUAGLIANA,
individually,

                Defendants.
_____

        Plaintiff, Deborah Ehling (hereinafter referred to as "Ms. Ehling"), residing at 1009 Gap View Hollow, Stroudsburg, Pennsylvania, through her attorneys, Ramp & Pisani, LLP, complaining of the defendants, says:

## JURISDICTION

        This action arises under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. 2701, et seq., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601, et seq., together with various ancillary state law claims. The court has jurisdiction of this matter under 28 U.S.C. 1331 and 28 U.S.C. 1332, as well as pendent jurisdiction over the state law claims.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

1. Defendant, Monmouth-Ocean Hospital Service Corp. (hereinafter referred to as "MONOC"), is a non- profit hospital service corporation dedicated to providing emergency medical services to the citizens of the State of New Jersey. MONOC is a non-profit member owned corporation authorized to transact business in the State of New Jersey. MONOC has facilities located throughout the State of New Jersey. Ms. Ehling reports to and works out of MONOC's main northern New Jersey office located on Willow Street, Millburn, New Jersey. MONOC also maintains administrative headquarters located at 4806 Megill Road, Wall, New Jersey.

2. Defendant, Vincent Robbins ("Robbins"), was at all relevant times herein, the President and CEO of MONOC. Plaintiff reports indirectly to Robbins. All of the improper, retaliatory, and illegal acts contained herein stem from the decisions of Robbins, many of which, upon information and belief, were authorized, approved and ratified by Robbins and MONOC.

3. Defendant, Stacy Quagliana (hereinafter referred to as "Quagliana"), was at all times relevant herein, an individual employed by MONOC, as Executive Director of Administration, and who acting within the course and scope of her employment with MONOC, directly engaged in and participated in the retaliatory and wrongful acts that resulted in damages being sustained by Ms. Ehling as referred to herein.

4. In 2004, MONOC hired Ms. Ehling as a registered nurse and paramedic.

5. From 2004 until July 2008, Ms. Ehling had an exemplary employment record. Her work performance met or exceeded MONOC's reasonable expectations of their employees.

6. In July of 2008, Ms. Ehling took over as acting president of the local union for PEMSA-NJ.  This union was chartered in June 2007.  The union represents 540 EMT's, paramedics and RN's that work for MONOC.

7. MONOC maintains a written disciplinary policy and procedure.  Pursuant to the policy, if an employee accumulates ten (10) or more active units their employment will be terminated.  An employee accumulates units if they deviate from MONOC's policies, procedures, applicable standards of care, and/or have employment performance issues.

8. As President, Ms. Ehling has been very proactive in attempting to protect the rights and safety of her union members.  In her first year as president, she filed numerous complaints and charges against MONOC with various state and federal agencies, including but not limited to the US Department of Labor and OSHA.  The charges involved serious safety, operational, and personnel issues, which she reasonably believed were affecting the integrity and continuity of the emergency medical services provided to MONOC's patients and the safety, health and welfare of the employees providing those services.

9. On May 18, 2009, the US Department of Labor cited MONOC for a variety of safety violations under federal law.  The Department of Labor assessed MONOC thousands of dollars in fines and penalties.

10. In the spring of 2009, some current and/or former MONOC employees filed a discrimination lawsuit in the Superior Court of New Jersey, Monmouth County: Law Division.  The caption of that case is _Sherrie Labarre, et al. v. Monmouth-Ocean Hospital Service Corp., et al._, bearing Docket Number L-1259-09.  On or about June 5, 2009, Ms. Ehling testified at a deposition on behalf of one of the plaintiffs named in the discrimination lawsuit.

11. During this timeframe, and during her private time off from work, Ms. Ehling maintained an account on Facebook. Facebook is a social networking site. In order to view Ms. Ehling's Facebook postings, she must invite you as a friend. If you are not invited as a friend, you cannot access and view her Facebook postings. Many of her coworkers were invited as friends to participate with Ms. Ehling on Facebook. She did not invite any members of management as friends.

12. As of June 2009, Ms. Ehling had made many Facebook postings. Those postings involved protected communications regarding the terms and conditions of employment and ongoing labor disputes with MONOC. She also posted her opinion regarding the unfortunate and tragic shooting which took place at the Holocaust Museum in Washington, DC.

13. On or about June 15, 2009, Ms. Ehling was suspended with pay due to her Facebook postings. The suspension with pay has become part of her permanent employment record. She allegedly violated the MONOC employee behavior policy.

14. Other similarly situated employees, who have allegedly violated MONOC's employee behavior policy, however, have not been suspended with pay. In fact, no adverse employment action has been taken against them.

15. She was suspended with pay pending a psychiatric evaluation. She had to travel for the psychiatric evaluation.

16. Other similarly situated employees, who allegedly violated MONOC's employee behavior policy, were not subject to the invasiveness of a psychiatric evaluation.

17. Having to undergo a psychiatric evaluation, emotionally devastated, embarrassed and humiliated Ms. Ehling. It caused her great severe stress and anxiety.

18. MONOC prepared and placed not one, but two memos in Ms. Ehling's personnel file regarding the Facebook suspension. The first memo to file specifically stated "...management received copies of postings from a social networking site. When asked about these comments, you admitted that the statements that were in MONOC's possession were, in fact, made by you." The second and edited memo to file on the same subject removed reference that management was in possession of copies of the postings from the social networking site and instead said "...you made a posting on a social networking site that was considered inappropriate."

19. A couple of days after going through the psychiatric evaluation, Ms. Ehling was "cleared" to return to work. She returned to work on or about July 3, 2009.

20. Subsequently, based upon information and belief, MONOC gained access to Ms. Ehling's Facebook account by having a supervisor(s) summon a MONOC employee, who was also one of Ms. Ehling's Facebook friends, into an office at the workplace, while the employee was working a shift, and coerced, strong-armed and/or threatened the employee into accessing his Facebook account on the work computer in the supervisor's presence. The supervisor proceeded to view the postings on this employee's Facebook account, as well as others, including Ms. Ehling's. Copies of the postings were made. The employee provided access to his Facebook account because he reasonably believed that an adverse employment action would be taken against him if he did not.

21. In early August 2009, MONOC filed a complaint against Ms. Ehling with the New Jersey Board of Nursing. MONOC knew that the filing of this complaint was frivolous and without merit. It was done maliciously and solely to attack Ms. Ehling in an attempt to damage her reputation, employment opportunities, and to potentially risk her losing her

nursing license.  Defendants filed this complaint after they were in receipt of the written psychiatric evaluation report of Ms. Ehling, which cleared her to return to work.

22.  During the same timeframe, MONOC also filed a complaint against Ms. Ehling with the New Jersey Department of Health, Office of Emergency Medical Services, attempting to affect her paramedic certification status.  This complaint was filed with the same intent that they filed the Board of Nursing complaint referenced above.

23.  These complaints are now a matter of public record.  Based upon information and belief, these complaints are still unresolved and pending against Ms. Ehling, although there is no basis in law or fact, for them.

24.  Since she became president of the union and/or testified in the discrimination lawsuit, Ms. Ehling has allegedly accumulated seven (7) disciplinary units under MONOC's disciplinary procedure and policy.  These alleged violations had no basis in fact.  Similarly situated employees who engaged in the same conduct were not issued any units under the MONOC disciplinary policy.

25.  On May 28, 2010, at approximately 5:30 a.m., near the completion of a long 12-hour shift, Ms. Ehling developed a crushing migraine headache, accompanied with nausea and light-headedness.

26.  MONOC already had FMLA paperwork on file covering this condition.  Ms. Ehling also had available PTO (Paid Time Off) in her bank, which could be applied to this situation.  Due to her sudden illness while on the job, Ms. Ehling intended to go out-of-service.  She did not want to risk any harm or injury to patients, her coworkers or herself.

27.  Defendant, Quagliana, the Executive Director of Administration, had this incident investigated by upper management.  On June 8, 2010, she issued a written reprimand to Ms.

Ehling claiming that Ms. Ehling "refused a 9-1-1 assignment in Irvington", that she did not have the required FMLA paperwork for this condition on file, that her paperwork expired and needed to be renewed, that Ms. Ehling was allegedly lethargic and/or suffering from a medical condition which made it unable for her to perform one or more of her essential functions, that she should go to her healthcare provider to determine if she would be able to perform her job safely, that this information should be clarified in a medical certificate, and that if it was not provided, she would not be scheduled for a double shift until MONOC received a medical clearance certificate.

28. Other similarly situated employees, who became ill during a 12 hour or more shift, were not subjected to a written reprimand, were not threatened with an interference of their FMLA rights, or an attempt to deny the exercise of those rights, were not required to pay to be seen by a healthcare provider, were not required to secure a medical clearance certificate or threatened with a loss of work hours. Rather, pursuant to MONOC policy, they were permitted to and did, in fact, apply their available PTO to the illness, which caused them to leave work early.

29. Almost a year later, on May 8, 2011, Ms. Ehling became ill near the end of her shift. Due to her illness, she was required to go out-of-service. Based upon what Ms. Quagliana had recommended to her in writing a year before, she indicated to the Control Center that she was going out-of-service for FMLA reasons.

30. In a letter, dated May 20, 2011, Quagliana challenged the veracity of Ms. Ehling's illness, even though it had been over a year since the last time she became ill during a work shift. Quagliana demanded clarification of her FMLA condition, demanded that Ms. Ehling's healthcare provider review her job description and complete a medical certification as it

pertained to her current condition, gave her a certain period of time to have the information supplied, and threatened her that if she did not get the information in, that she would be subject to disciplinary process and/or termination for allegedly abandoning her position by virtue of her failure to appear for work or haven taken unauthorized days off.

31. Ms. Ehling had available PTO for this situation. Other similarly situated employees are permitted to apply their available PTO and not have their FMLA status questioned and threatened by Quagliana.

32. Since the Quagliana memo, Ms. Ehling has received two additional "memos to file" regarding becoming ill on the job on May 8, 2011.

33. In the summer of 2010, Ms. Ehling, on behalf of the union, filed complaints against MONOC alleging that their paramedics were becoming sick on the job because they were exposed to misted pesticides MONOC was using to clean their ambulances.

34. Between July and October 2010, the NJDEP warned MONOC about the use of the misted pesticides.

35. On January 4, 2011, the Federal EPA ordered MONOC to stop using the micro mist system that sprays a sub-micron fog of anti-microbial chemicals inside ambulances. The EPA validated the union and Ms. Ehling's complaints that MONOC EMT's, paramedics and RNs were being sickened on the job by exposure to unlawfully applied pesticides.

36. A month later, MONOC assessed Ms. Ehling two units under their disciplinary policy and procedure for allegedly being late to start a shift. A dangerous snowstorm caused her and others to be late for the start of their shift. Other situated similar employees did not receive any type of disciplinary action for starting a shift late, especially if the weather conditions were hazardous.

37. In April 2011, Ms. Ehling, on behalf of the union, filed charges against MONOC with the NLRB claiming that MONOC is prohibiting the employees from engaging in union activities and that they are refusing to bargain for a new collective bargaining agreement in good faith.

38. On or about May 4, 2011, a memo to file was issued against Ms. Ehling for allegedly violating MONOC policy for failing to submit a vehicle check sheet.  When Ms. Ehling objected to this memo to file, MONOC's Senior Vice President, COO, queried what vehicle check sheet requirement?  In an email, dated May 23, 2011, however, this same Senior Vice President, COO, wrote to Ms. Ehling advising her that the vehicle check sheets had been located and that the memo to file in her personnel file had been removed.

39. Ever since Ms. Ehling became president and since she testified under oath at a deposition regarding a co-employee's discrimination claim, the defendants have engaged in a systematic pattern of retaliatory actions against Ms. Ehling which have created a hostile and intimidating work environment which have drastically altered the terms and conditions of Ms. Ehling's employment.

40. In addition to the actions specified above, Ms. Ehling has requested and been improperly denied a work shift schedule change.  Other similarly situated employees are readily allowed to request and receive work shift schedule changes.  Even other employees who deal with more emergent care than Ms. Ehling have requested and have received work shift scheduling changes.

41. Defendants' actions have resulted in Ms. Ehling sustaining a loss of status, a clouding of her job responsibilities and duty, a diminution in her authority, and have limited, segregated, or classified her in a way to deprive her of employment opportunities.

42. Defendants' actions have caused Ms. Ehling to suffer physical and emotional distress. The distress has manifested itself with headaches, loss of sleep, depression, stress, anxiety, physical injury, humiliation, embarrassment, mental anguish and a loss of personal dignity, as well as economic loss.

## FIRST COUNT

### (VIOLATION OF 18 U.S.C. 2701, et. seq.)

43. Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts as if same were set forth at length herein.

44. As a result of defendants' conduct described above, defendants violated the provisions of 18 U.S.C. 2701, et. seq., by accessing without permission, and/or improperly monitoring the electronic communications being stored on the plaintiff's Facebook account.

45. Defendants used the improperly accessed and monitored electronic communications to take adverse employment action(s) against plaintiff.

46. As a result, plaintiff has been damaged.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

    A. For compensatory damages.

    B. For statutory damages pursuant to 18 U.S.C. 2707.

    C. For punitive damages.

    D. For reasonable attorney fees.

    E. For an order requiring defendants to remove and/or expunge the two memos to file regarding the Facebook matter from plaintiff's permanent employment file.

    F. For such other and further relief as the court may deem just and equitable.

## SECOND COUNT

### (VIOLATION OF NJSA 156A-27, et. seq.)

47. Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts and the First Count as if same were set forth at length herein.

48. As a result of defendants conduct described above, defendants have violated the provisions of NJSA 2A:156A-27, et. seq. by accessing without permission and improperly monitoring the electronic communications being stored on the plaintiff's Facebook account.

49. Defendants used the improperly accessed and monitored electronic communications to take adverse employment action(s) against the plaintiff.

50. As a result, the plaintiff has been damaged.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

 A.  For compensatory damages.

 B.  For statutory damages pursuant to NJSA 2A:156A-32.

 C.  For punitive damages.

 D.  For reasonable attorney fees.

 E.  For an order requiring defendants to remove and/or expunge the two memos to file regarding the Facebook matter from plaintiff's permanent employment file.

 F.  For such other and further relief as the court may deem just and equitable.

## THIRD COUNT

### (VIOLATION OF FAMILY MEDICAL LEAVE ACT, 29 U.S.C. 2601 et. seq.)

51. Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count and Second Count as if same were set forth at length herein.

52. As a result of defendants' conduct described above, defendants have violated the provisions of 26 U.S.C. 2601 et. seq., by interfering with, restraining or denying the exercise or attempts to exercise plaintiff's rights under the Act.

53. Defendants have retaliated against plaintiff for taking leave or engaging in activity protected by the Act. Defendants have engaged in a pattern of retaliatory actions in violation of this Act, which continue to date.

54. As a result, plaintiff has been damaged.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A. For compensatory damages.

B. For statutory damages, including any and all damages, attorney fees and costs available under 29 U.S.C. 2617.

C. For punitive damages.

D. For reasonable attorney fees.

E. For such other and further relief as the court may deem just and equitable.

## FOURTH COUNT

## (VIOLATION OF LAW AGAINST DISCRIMINATION NJSA 10:5-12, et seq.)

55. Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count and Third Count, as if same were set forth at length herein.

56. As a result of defendants conduct described above, defendants have violated the provisions of NJSA 10:5-12d which prohibit reprisals against individuals who engage in protected activity under the Act and, specifically in this case, protect the plaintiff against reprisals because she has opposed any practices or acts forbidden under the Act and testified or assisted in any proceeding under the Act. Plaintiff gave a deposition on behalf of a former co-worker who had filed a discrimination lawsuit against MONOC.

57. As a result, defendants engage in a pattern of retaliatory actions against the plaintiff in violation of the Act.

58. As a result, plaintiff has sustained and continues to sustain adverse employment action(s).

59. As a result, the plaintiff has been damaged.

60. Defendants retaliatory and discriminatory acts perpetuated against plaintiff were malicious, willful and wanton and justify any award of punitive damages.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B. For statutory damages

C. For punitive damages.

D. For reasonable attorney fees and costs of suit pursuant to the fee shifting provisions of the LAD NJSA 10:5-12, et seq.

E. For an order requiring defendants to purge all of plaintiff's accumulated disciplinary units from her permanent employment file.

F. For such other and further relief as the court may deem just and equitable.

## FIFTH COUNT

## (VIOLATION OF CONSCIENTIOUS EMPLOYEE PROTECTION ACT, "CEPA" NJSA 34:19-1 et. seq.)

61. Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count, Third Count and Fourth Count, as if same were set forth at length herein.

62. The complaint filed by the plaintiff, on behalf of the union, with regard to the defendants' use of pesticides in the cleaning of their ambulances, which resulted in the EPA ordering the defendants to stop using these pesticides, is protected by the New Jersey Conscientious Employee Protection Act (NJSA 34:19-1 et. seq.)

63. Defendants, with malice or willful or wanton disregard of the plaintiff's rights, have taken the aforementioned retaliatory action(s) against the plaintiff in violation of NJSA 34:19-3 et. seq.

64. As a direct and proximate result of defendants knowing violation of plaintiff's rights under CEPA, plaintiff has sustained severe emotional distress, physical injury, humiliation, embarrassment, mental anguish, loss of personal dignity, and economic loss.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For statutory damages pursuant to NJSA 34:19-1, et. seq.

C.  For punitive damages.

D.  For reasonable attorney fees and costs of suit pursuant to the fee shifting provisions of CEPA NJSA 34:19-1, et seq.

E.  For an order requiring defendants to purge all of plaintiff's accumulated disciplinary units from her permanent employment file.

F.  For such other and further relief as the court may deem just and equitable.

## SIXTH COUNT

### (VIOLATION OF FIRST AMENDMENT RIGHT TO FREE SPEECH)

65. Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count, Third Count, Fourth Count and Fifth Count, as if same were set forth at length herein.

66. Plaintiff exercised her right to free speech under both the United States Constitution (First Amendment) and the New Jersey Constitution with regard to all of the postings she made on her Facebook account prior to June 15, 2009.

67. Her Facebook postings clearly involved protected communications regarding the terms and conditions of employment and ongoing labor disputes besides her opinion regarding the shooting at the Holocaust Museum in Washington, DC.

68. This is protected speech because the postings involve a matter of public concern.

69. Defendants improperly used the postings to take adverse employment action(s) against the plaintiff.

70. Defendants retaliatory actions contravene the First Amendment of the United States Constitution and the Liberty of Speech in Freedom of Assembly Clauses of the New Jersey Constitution (NJ CONST. ART. 1, PAR. A6, 18.).

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For punitive damages.

C.  For reasonable attorney fees.

D.  For an order requiring defendants to remove and/or expunge the two memos to file regarding the Facebook matter from plaintiff's permanent employment file.

E.  For such other and further relief as the court may deem just and equitable.

## SEVENTH COUNT

## (INVASION OF PRIVACY)

71. Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count, Third Count, Fourth Count, Fifth Count and Sixth Count, as if same were set forth at length herein.

72. Based upon defendants' actions as outlined above, defendants violated plaintiff's right to privacy.

73. Defendants' improper invasion of plaintiff's privacy included requiring her to submit to a psychiatric evaluation. This psychiatric examination was highly offensive to a reasonable person and was caused by defendants' conduct.

74. Defendants' actions constituted an impermissible intrusion upon plaintiff's seclusion or solitude and/or her private affairs.  Defendants invaded upon something secret, secluded or private pertaining to the plaintiff.  Defendants invasion would be highly invasive to a reasonable person.

75. Plaintiff was damaged by such unauthorized action.  Defendants invaded the privacy of the plaintiff.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For punitive damages.

C.  For reasonable attorney fees.

D.  For an order requiring defendants to remove and/or expunge the two memos to file regarding the Facebook matter from plaintiff's permanent employment file.

E.  For such other and further relief as the court may deem just and equitable.

## EIGHTH COUNT

## (MALICIOUS PROSECUTION)

76. Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count, Third Count, Fourth Count, Fifth Count, Sixth Count and Seventh Count, as if same were set forth at length herein.

77. Defendants filed not one, but two baseless complaints against the plaintiff.  One with the New Jersey Board of Nursing and the other with the New Jersey Department of Health Office of Emergency Medical Services.

78. The filings were actuated by malice in that defendants knew that the filing of the complaints was not accurate. They knew that the mental health claim against plaintiff was false since she had already been cleared by the psychiatric examination, which they were in receipt of prior to the filing of the complaint, and defendants willfully reported it as true anyway.

79. There was a complete absence of probable cause for the filing of the complaint and both complaints ended favorably for the plaintiff.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A. For compensatory damages.

B. For punitive damages.

C. For reasonable attorney fees.

D. For an order requiring defendants to remove and/or expunge the two memos to file regarding the Facebook matter from plaintiff's permanent employment file.

E. For such other and further relief as the court may deem just and equitable.

## NINTH COUNT

### (MALICIOUS ABUSE OF PROCESS)

80. Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count, Third Count, Fourth Count, Fifth Count, Sixth Count, Seventh Count and Eighth Count, as if same were set forth at length herein.

81. Defendants' filing of the two complaints was brought without probable cause.

82. The bringing of those complaints by defendants was actuated by malice.

83. The complaints were terminated favorably to the plaintiff.

84. Plaintiff suffered a special grievance.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A. For compensatory damages.

B. For punitive damages.

C. For reasonable attorney fees.

D. For an order requiring defendants to remove and/or expunge the two memos to file regarding the Facebook matter from plaintiff's permanent employment file.

E. For such other and further relief as the court may deem just and equitable.

## JURY DEMAND

Plaintiff, Deborah Ehling, demands trial of her causes of action herein before a jury.

RAMP & PISANI, LLP
60 Westervelt Avenue
P.O. Box 249
Tenafly, New Jersey 07670
fred@rampandpisani.com
Attorneys for Plaintiff, Deborah Ehling

Dated: June 8, 2011            _____s/Fred J. Pisani_____
                                By: Fred J. Pisani, Esq.