RAMP & PISANI, LLP
60 Westervelt Avenue
P.O. Box 249
Tenafly, New Jersey 07670
201-567-8877
fred@rampandpisani.com
Attorneys for Plaintiff


UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

DEBORAH EHLING,

                Plaintiff,                Civil Action No. 2-11-CV-03305 (WJM)

      v.                                FIRST AMENDED COMPLAINT AND
                                      JURY DEMAND

MONMOUTH-OCEAN HOSPITAL SERVICE
CORP, d/b/a MONOC, VINCENT ROBBINS,
individually, AND STACY QUAGLIANA,
individually,

                Defendants.
_____

     Plaintiff, Deborah Ehling (hereinafter referred to as "Ms. Ehling"), residing at 1009

Gap View Hollow, Stroudsburg, Pennsylvania, through her attorneys, Ramp & Pisani, LLP,

complaining of the defendants, says:

## <u>JURISDICTION</u>

     This action arises under the Electronic Communications Privacy Act ("ECPA"), 18

U.S.C. 2701, et seq., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601, et seq.,

together with various ancillary state law claims.  The court has jurisdiction of this matter

under 28 U.S.C. 1331 and 28 U.S.C. 1332, as well as pendent jurisdiction over the state law

claims.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

1.   Defendant, Monmouth-Ocean Hospital Service Corp. (hereinafter referred to as "MONOC"), is a non- profit hospital service corporation dedicated to providing emergency medical services to the citizens of the State of New Jersey.  MONOC is a non-profit member owned corporation authorized to transact business in the State of New Jersey.  MONOC has facilities located throughout the State of New Jersey with administrative headquarters located at 4806 Megill Road, Wall, New Jersey.

2.   Defendant, Vincent Robbins ("Robbins"), was at all relevant times herein, the President and CEO of MONOC.  Plaintiff reports indirectly to Robbins.  All of the improper, retaliatory, and illegal acts contained herein stem from the decisions of Robbins, many of which, upon information and belief, were authorized, approved and ratified by Robbins and MONOC.

3.   Defendant, Stacy Quagliana (hereinafter referred to as "Quagliana"), was at all times relevant herein, an individual employed by MONOC, as Executive Director of Administration, and who acting within the course and scope of her employment with MONOC, directly engaged in and participated in the retaliatory and wrongful acts that resulted in damages being sustained by Ms. Ehling as referred to herein.

4.   In 2004, MONOC hired Ms. Ehling as a registered nurse and paramedic.

5.   From 2004 until July 2008, Ms. Ehling had an exemplary employment record.  Her work performance met or exceeded MONOC's reasonable expectations of their employees.

6.   In July of 2008, Ms. Ehling took over as acting president of the local union for PEMSA-NJ.  This union was chartered in June 2007.  The union represents 540 EMT's, paramedics and RN's that work for MONOC.

7.  MONOC maintains a written disciplinary policy and procedure.  Pursuant to the policy, if an employee accumulates ten (10) or more active units their employment will be terminated.  An employee accumulates units if they deviate from MONOC's policies, procedures, applicable standards of care, and/or have employment performance issues.

8.  As President, Ms. Ehling has been very proactive in attempting to protect the rights and safety of her union members.  In her first year as president, she filed numerous complaints and charges against MONOC with various state and federal agencies, including but not limited to the US Department of Labor and OSHA.  The charges involved serious safety, operational, and personnel issues, which she reasonably believed, were affecting the integrity and continuity of the emergency medical services provided to MONOC's patients and the safety, health and welfare of the employees providing those services.

9.  On May 18, 2009, the US Department of Labor cited MONOC for a variety of safety violations under federal law.  The Department of Labor assessed MONOC thousands of dollars in fines and penalties.

10.  In the spring of 2009, some current and/or former MONOC employees filed a discrimination lawsuit in the Superior Court of New Jersey, Monmouth County: Law Division.  The caption of that case is *Sherrie Labarre, et al. v. Monmouth-Ocean Hospital Service Corp., et al.*, bearing Docket Number L-1259-09.  On or about June 5, 2009, Ms. Ehling testified at a deposition on behalf of one of the plaintiffs named in the discrimination lawsuit.

11.  During this timeframe, and during her private time off from work, Ms. Ehling maintained an account on Facebook.  Facebook is a social networking site.  In order to view Ms. Ehling's Facebook postings, she must invite you as a friend.  If you are not invited as a

friend, you cannot access and view her Facebook postings.  Many of her coworkers were invited as friends to participate with Ms. Ehling on Facebook.  She did not invite any members of management as friends.

12.  As of June 2009, Ms. Ehling had made many Facebook postings.  Those postings involved protected communications regarding the terms and conditions of employment and ongoing labor disputes with MONOC.  She also posted her opinion regarding the unfortunate and tragic shooting, which took place at the Holocaust Museum in Washington, DC.

13.  On or about June 15, 2009, Ms. Ehling was suspended with pay due to her Facebook postings.  The suspension with pay has become part of her permanent employment record.  She allegedly violated the MONOC employee behavior policy.

14.  Other similarly situated employees, who have allegedly violated MONOC's employee behavior policy, however, have not been suspended with pay.  In fact, no adverse employment action has been taken against them.

15.  She was suspended with pay pending a psychiatric evaluation.  She had to travel for the psychiatric evaluation.

16.  Other similarly situated employees, who allegedly violated MONOC's employee behavior policy, were not subject to the invasiveness of a psychiatric evaluation.

17.  Having to undergo a psychiatric evaluation, emotionally devastated, embarrassed and humiliated Ms. Ehling.  It caused her great severe stress and anxiety.

18.  MONOC prepared and placed not one, but two memos in Ms. Ehling's personnel file regarding the Facebook suspension.  The first memo to file specifically stated "...management received copies of postings from a social networking site.  When asked about these comments, you admitted that the statements that were in MONOC's possession were, in

fact, made by you."  The second and edited memo to file on the same subject removed

reference that management was in possession of copies of the postings from the social

networking site and instead said "...you made a posting on a social networking site that was

considered inappropriate."

19.  A couple of days after going through the psychiatric evaluation, Ms. Ehling was

"cleared" to return to work.  She returned to work on or about July 3, 2009.

20.  Subsequently, Ms. Ehling learned how MONOC gained access to her Facebook

account.  A member of upper management summoned a MONOC employee, who was also

one of Ms. Ehling's Facebook friends, into his office at the workplace.  He was the

employee's supervisor.  The supervisor coerced, strong-armed and/or threatened this

employee into accessing his Facebook account on the work computer in the supervisor's

presence.  The supervisor proceeded to view the postings on this employee's Facebook

account, as well as others, including Ms. Ehling's.  He made copies of the postings.  The

employee, who was already on probation, provided access to his Facebook account because

he reasonably believed that further adverse employment action, would be taken against him if

he did not.

21.  In early August 2009, MONOC filed a complaint against Ms. Ehling with the

New Jersey Board of Nursing.  MONOC knew that the filing of this complaint was frivolous

and without merit.  It was done maliciously and solely to attack Ms. Ehling in an attempt to

damage her reputation, employment opportunities, and to potentially risk her losing her

nursing license.  Defendants filed this complaint after they were in receipt of the written

psychiatric evaluation report of Ms. Ehling, which cleared her to return to work.

22.   During the same timeframe, MONOC also filed a complaint against Ms. Ehling with the New Jersey Department of Health, Office of Emergency Medical Services, attempting to affect her paramedic certification status.  This complaint was filed with the same intent that they filed the Board of Nursing complaint referenced above.

23.   These complaints are now a matter of public record.  Based upon information and belief, the Office of Emergency Medical Services complaint is still unresolved and pending against Ms. Ehling, although there is no basis in law or fact, for them.

On August 16, 2011, Ms. Ehling was served with a subpoena by the State of New Jersey to appear before a committee of the New Jersey State Board of Nursing on September 19, 2011, to give testimony relating to her nursing practice, including her present and past employment, and including events that led to her suspension with pay from MONOC in June of 2009. This subpoena was issued more than two years after the suspension, but only weeks after MONOC was served with the original complaint.

24.   Since she became president of the union and/or testified in the discrimination lawsuit, Ms. Ehling has allegedly accumulated seven (7) disciplinary units under MONOC's disciplinary procedure and policy.  These alleged violations had no basis in fact.  Similarly situated employees who engaged in the same conduct were not issued any units under the MONOC disciplinary policy.

25.   On May 28, 2010, at approximately 5:30 a.m., near the completion of a long, double shift, Ms. Ehling developed a crushing migraine headache, accompanied with nausea and light-headedness.

26.   MONOC already had FMLA paperwork on file covering this condition.  Ms. Ehling also had available PTO (Paid Time Off) in her bank, which could be applied to this

situation.  Due to her sudden illness while on the job, Ms. Ehling intended to go out-of-service.  She did not want to risk any harm or injury to patients, her coworkers or herself.

27.   Defendant, Quagliana, the Executive Director of Administration, had this incident investigated by upper management.  On June 8, 2010, she issued a written reprimand to Ms. Ehling claiming that Ms. Ehling "refused a 9-1-1 assignment in Irvington", that she did not have the required FMLA paperwork for this condition on file, that her paperwork expired and needed to be renewed, that Ms. Ehling was allegedly lethargic and/or suffering from a medical condition which made it unable for her to perform one or more of her essential functions, that she should go to her healthcare provider to determine if she would be able to perform her job safely, that this information should be clarified in a medical certificate, and that if it was not provided, she would not be scheduled for a double shift until MONOC received a medical clearance certificate.

28.   Other similarly situated employees, who became ill during a 12 hour or more shift, were not subjected to a written reprimand, were not threatened with an interference of their FMLA rights, or an attempt to deny the exercise of those rights, were not required to pay to be seen by a healthcare provider, were not required to secure a medical clearance certificate or threatened with a loss of work hours.  Rather, pursuant to MONOC policy, they were permitted to and did, in fact, apply their available PTO to the illness, which caused them to leave work early.

29.   Almost a year later, on May 8, 2011, Ms. Ehling became ill near the end of her shift.  Due to her illness, she was required to go out-of-service.  Based upon what Ms. Quagliana had recommended to her in writing a year before, she indicated to the Control Center that she was going out-of-service for FMLA reasons.

30.  In a letter, dated May 20, 2011, Quagliana challenged the veracity of Ms. Ehling's illness, even though it had been over a year since the last time she became ill during a work shift.  Quagliana demanded clarification of her FMLA condition, demanded that Ms. Ehling's healthcare provider review her job description and complete a medical certification as it pertained to her current condition, gave her a certain period of time to have the information supplied, and threatened her that if she did not get the information in, that she would be subject to disciplinary process and/or termination for allegedly abandoning her position by virtue of her failure to appear for work or haven taken unauthorized days off.

31.  Ms. Ehling had available PTO for this situation.  Other similarly situated employees are permitted to apply their available PTO and not have their FMLA status questioned and threatened by Quagliana.

32.  Since the Quagliana memo, Ms. Ehling has received two additional "memos to file" regarding becoming ill on the job on May 8, 2011.

33.  In the summer of 2010, Ms. Ehling, on behalf of the union, filed complaints against MONOC alleging that their paramedics were becoming sick on the job because they were exposed to misted pesticides MONOC was using to clean their ambulances.

34.  Between July and October 2010, the NJDEP warned MONOC about the use of the misted pesticides.

35.  On January 4, 2011, the Federal EPA ordered MONOC to stop using the micro mist system that sprays a sub-micron fog of anti-microbial chemicals inside ambulances.  The EPA validated the union and Ms. Ehling's complaints that MONOC EMT's, paramedics and RNs were being sickened on the job by exposure to unlawfully applied pesticides.

36.  A month later, Ms. Ehling was assessed two units under the disciplinary policy and procedure for allegedly being late to start a shift.  A dangerous snowstorm caused her and others to be late for the start of their shift.  Other situated similar employees did not receive any type of disciplinary action for starting a shift late, especially if the weather conditions were hazardous.

37.  In April 2011, Ms. Ehling, on behalf of the union, filed charges against MONOC with the NLRB claiming that MONOC is prohibiting the employees from engaging in union activities and that they are refusing to bargain for a new collective bargaining agreement in good faith.

38.  On or about May 4, 2011, a memo to file was issued against Ms. Ehling for allegedly violating MONOC policy for failing to submit a vehicle check sheet.  When Ms. Ehling objected to this memo to file, MONOC's Senior Vice President, COO, queried what vehicle check sheet requirement?  In an email, dated May 23, 2011, however, this same Senior Vice President, COO, wrote to Ms. Ehling advising her that the vehicle check sheets had been located and that the memo to file in her personnel file had been removed.

39.  Ever since Ms. Ehling became president and since she testified under oath at a deposition regarding a co-employee's discrimination claim, the defendants have engaged in a systematic pattern of retaliatory actions against Ms. Ehling which have created a hostile and intimidating work environment which have drastically altered the terms and conditions of Ms. Ehling's employment.

40.  In addition to the actions specified above, Ms. Ehling has requested and been improperly denied a work shift schedule change.  Other similarly situated employees are readily allowed to request and receive work shift schedule changes.  Even other employees

who deal with more emergent care than Ms. Ehling have requested and have received work shift scheduling changes.

41.  On June 8, 2011, Ms. Ehling filed a multi-count complaint against the defendants alleging a violation of various federal and state statutes.

42.  On July 7, 2011, defendants threatened to take disciplinary action against Ms. Ehling because she was performing her required and mandated duties as union president.

43.  Defendants willfully and improperly denied Ms. Ehling's two requests for PTO, which included a prepaid seminar and hotel reservation made months before.

44.  On July 15, 2011, Defendants issued Ms. Ehling another Notice of Employee Action for allegedly losing and not reporting a misplaced unit BLS bag. She was assessed two (2) additional disciplinary units and a two (2) day suspension was imposed and then stayed. She explained in writing that the bag was not lost and that it had been reported, but defendants have not vacated the suspension and/or removed the disciplinary notice from her record.

45. In July 2011, defendants have willfully failed to pay Ms.Ehling all of the wages she is owed. The shortfall includes both her standard and overtime wages.

46. On July 28, 2011, Ms. Ehling was summoned into a meeting with defendants' North Director. The Director advised her that her employment was being terminated effective immediately allegedly because she had accumulated too many disciplinary units.

47. At the time of this conversation, Ms. Ehling's "accumulated" disciplinary units had not exceeded the amount, which could result in termination under defendants' written disciplinary policy. The Director advised her that she was being written up and would receive another Notice of Employee Action for alleged lateness and that this latest notice would subject her to termination for the accumulation of too many disciplinary units.

48.  The Director told her that she would subsequently be receiving the written termination notice and that the termination was stayed because of defendants' nurse shortage.

49. Notwithstanding the notice of termination, Ms. Ehling worked her previously scheduled weekend hours. On August 2, 2011, the North Director emailed Ms. Ehling a Notice of Employee Action, which assessed Ms. Ehling 4 disciplinary units for alleged lateness, allegedly bringing her total of disciplinary units to 12. Action taken: Termination (stayed). The Notice was dated July 22, 2011. Ms. Ehling disputes the lateness charge.

50. Other situated similar employees did not receive any type of disciplinary action for alleged lateness and/or loss of equipment.

51. Other situated similar employees were not terminated <u>prior</u> to receiving a written Notice of Employee Action, which if upheld, would provide defendants grounds for termination under their written policy for an over accumulation of disciplinary units.

52.  Defendants' actions have resulted in Ms. Ehling sustaining a loss of status, a clouding of her job responsibilities and duty, a diminution in her authority, and have limited, segregated, or classified her in a way to deprive her of employment opportunities.

53.  Defendants' actions have caused Ms. Ehling to suffer physical and emotional distress.  The distress has manifested itself with headaches, loss of sleep, depression, stress, anxiety, physical injury, humiliation, embarrassment, mental anguish and a loss of personal dignity, as well as economic loss, including but not limited to back and future lost wages.

## **FIRST COUNT**

## **(VIOLATION OF 18 U.S.C. 2701, et. seq.)**

54.  Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts as if same were set forth at length herein.

55.  As a result of defendants' conduct described above, defendants violated the provisions of 18 U.S.C. 2701, et. seq., by accessing without permission, and/or improperly monitoring the electronic communications being stored on the plaintiff's Facebook account.

56.  Defendants used the improperly accessed and monitored electronic communications to take adverse employment action(s) against plaintiff.

57.  As a result, plaintiff has been damaged.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For statutory damages pursuant to 18 U.S.C. 2707.

C.  For punitive damages.

D.  For reasonable attorney fees.

E.  For an order requiring defendants to remove and/or expunge the two memos to file regarding the Facebook matter from plaintiff's permanent employment file.

F.  For such other and further relief as the court may deem just and equitable.

**SECOND COUNT**

**(VIOLATION OF NJSA 156A-27, et. seq.)**

58.  Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts and the First Count as if same were set forth at length herein.

59.  As a result of defendants conduct described above, defendants have violated the provisions of NJSA 2A:156A-27, et. seq. by accessing without permission and improperly monitoring the electronic communications being stored on the plaintiff's Facebook account.

60.  Defendants used the improperly accessed and monitored electronic communications to take adverse employment action(s) against the plaintiff.

61.  As a result, the plaintiff has been damaged.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For statutory damages pursuant to NJSA 2A:156A-32.

C.  For punitive damages.

D.  For reasonable attorney fees.

E.  For an order requiring defendants to remove and/or expunge the two memos to file regarding the Facebook matter from plaintiff's permanent employment file.

F.  For such other and further relief as the court may deem just and equitable.

## THIRD COUNT

## (VIOLATION OF FAMILY MEDICAL LEAVE ACT, 29 U.S.C. 2601 et. seq.)

62.  Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count and Second Count as if same were set forth at length herein.

63.  As a result of defendants' conduct described above, defendants have violated the provisions of 26 U.S.C. 2601 et. seq., by interfering with, restraining or denying the exercise or attempts to exercise plaintiff's rights under the Act.

64.  Defendants have retaliated against plaintiff for taking leave or engaging in activity protected by the Act.  Defendants have engaged in a pattern of retaliatory actions in violation of this Act culminating in plaintiff's termination on July 28, 2011.

65.  As a result, plaintiff has been damaged.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For statutory damages, including any and all damages, attorney fees and costs available under 29 U.S.C. 2617.

C.  For punitive damages.

D.  For reasonable attorney fees.

E.  For such other and further relief as the court may deem just and equitable.

## FOURTH COUNT

## (VIOLATION OF LAW AGAINST DISCRIMINATION NJSA 10:5-12, et seq.)

66.  Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count and Third Count, as if same were set forth at length herein.

67.  As a result of defendants conduct described above, defendants have violated the provisions of NJSA 10:5-12d which prohibit reprisals against individuals who engage in protected activity under the Act and, specifically in this case, protect the plaintiff against reprisals because she has opposed any practices or acts forbidden under the Act and testified or assisted in any proceeding under the Act.  Plaintiff gave a deposition on behalf of a former co-worker who had filed a discrimination lawsuit against MONOC.

68.  As a result, defendants engage in a pattern of retaliatory actions against the plaintiff in violation of the Act.

69.  As a result, plaintiff has sustained and continues to sustain adverse employment action(s).

70.  As a result, the plaintiff has been damaged.

71.  Defendants retaliatory and discriminatory acts perpetuated against plaintiff were malicious, willful and wanton and justify any award of punitive damages.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For statutory damages

C.  For punitive damages.

D.  For reasonable attorney fees and costs of suit pursuant to the fee shifting provisions of the LAD NJSA 10:5-12, et seq.

E.  For an order requiring defendants to purge all of plaintiff's accumulated disciplinary units from her permanent employment file.

F.  For such other and further relief as the court may deem just and equitable.

## FIFTH COUNT

## (VIOLATION OF CONSCIENTIOUS EMPLOYEE PROTECTION ACT, "CEPA" NJSA 34:19-1 et. seq.)

72.  Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count, Third Count and Fourth Count, as if same were set forth at length herein.

73.  The complaint filed by the plaintiff, on behalf of the union, with regard to the defendants' use of pesticides in the cleaning of their ambulances, which resulted in the EPA ordering the defendants to stop using these pesticides, is protected by the New Jersey Conscientious Employee Protection Act (NJSA 34:19-1 et. seq.).

74.  Defendants, with malice or willful or wanton disregard of the plaintiff's rights, have taken the aforementioned retaliatory action(s) against the plaintiff in violation of NJSA 34:19-3 et. seq.

75.  As a direct and proximate result of defendants knowing violation of plaintiff's rights under CEPA, plaintiff has sustained severe emotional distress, physical injury, humiliation, embarrassment, mental anguish, loss of personal dignity, and economic loss.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For statutory damages pursuant to NJSA 34:19-1, et. seq.

C.  For punitive damages.

D.  For reasonable attorney fees and costs of suit pursuant to the fee shifting provisions of  CEPA NJSA 34:19-1, et seq.

E.  For an order requiring defendants to purge all of plaintiff's accumulated disciplinary units from her permanent employment file.

F.  For such other and further relief as the court may deem just and equitable.

## SIXTH COUNT

## (INVASION OF PRIVACY)

76.  Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count, Third Count, Fourth Count, and Fifth Count, as if same were set forth at length herein.

77.  Based upon defendants' actions as outlined above, defendants violated plaintiff's right to privacy.

78.  Defendants intentionally and without plaintiff's knowledge infringed upon her seclusion, solitude or private affairs by accessing her private Face book postings without authorization.

79.  Defendants' actions constituted an impermissible intrusion upon plaintiff's seclusion or solitude and/or her private affairs.  Defendants invaded upon something secret,

secluded or private pertaining to the plaintiff.  Defendants' invasion would be highly invasive to a reasonable person.

80.  Plaintiff was damaged by such unauthorized actions, including being subjected to a psychiatric evaluation. This psychiatric examination would be highly offensive to a reasonable person.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For punitive damages.

C.  For reasonable attorney fees.

D.  For an order requiring defendants to remove and/or expunge the two memos to file regarding the Facebook matter from plaintiff's permanent employment file.

E.  For such other and further relief as the court may deem just and equitable.

## SEVENTH COUNT

## (VIOLATION OF LAW AGAINST DISCRIMINATION NJSA 10:5-12, et seq.)

81.  Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count, Third Count, Fourth Count, Fifth Count, and Sixth Count, as if same were set forth at length herein.

82.  As a result of defendants conduct described above, defendants have violated the provisions of NJSA 10:5-12d which prohibit reprisals against individuals who engage in protected activity under the Act and, specifically in this case, protect the plaintiff against

reprisals because she has opposed any practices or acts forbidden under the Act and testified or assisted in any proceeding under the Act.

83. Plaintiff filed a multi-count lawsuit against the defendants on June 13, 2011, which included a claim under the New Jersey Law Against Discrimination, NJSA 10:5-12 et. seq.

84.  Since the filing, defendants have engaged in a pattern of retaliatory actions against the plaintiff in violation of the Act as outlined in the above referenced Factual Allegations Common to All Counts, which resulted in her termination on July 28, 2011.

85.  As a result, the plaintiff has been damaged.

86.  Defendants retaliatory and discriminatory acts perpetuated against plaintiff were malicious, willful and wanton and justify any award of punitive damages.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For statutory damages.

C.  For punitive damages.

D.  For reasonable attorney fees and costs of suit pursuant to the fee shifting provisions of the LAD NJSA 10:5-12, et seq.

E.  For an order requiring defendants to purge all of plaintiff's accumulated disciplinary units from her permanent employment file.

F.  For such other and further relief as the court may deem just and equitable.

## EIGHTH COUNT

## (VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 USC 201, et seq.)

87.  Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count, Third Count, Fourth Count, Fifth Count, Sixth Count, and Seventh Count, as if same were set forth at length herein.

88.  As a result of defendants conduct described above, defendants have violated the provisions of 29 USC 201, et. seq. by willfully failing to pay plaintiff all of the wages she is owed, The shortfall includes both standard and overtime wages.

89.  As a result, the plaintiff has been damaged.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For statutory damages

C.  For punitive damages.

D.  For reasonable attorney fees and costs of suit pursuant 29 USC 201, et. seq.

E.  For an order requiring defendants to purge all of plaintiff's accumulated disciplinary units from her permanent employment file.

F.  For such other and further relief as the court may deem just and equitable.

## NINTH COUNT

## (VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW, NJSA 34:11-4.1,et seq.)

90.  Plaintiff repeats and re-alleges all of the allegations contained in the Factual Allegations Common to All Counts, the First Count, Second Count, Third Count, Fourth Count, Fifth Count, Sixth Count, Seventh Count,  and Eighth Count, as if same were set forth at length herein.

91.  As a result of defendants conduct described above, defendants have violated the provisions of NJSA 34:11-4.1, et. seq., by willfully failing to pay plaintiff all of the wages she is owed, The shortfall includes both standard and overtime wages.

92.  As a result, the plaintiff has been damaged.

WHEREFORE, plaintiff, Deborah Ehling, demands judgment against defendants, jointly, severally, and individually, for the following:

A.  For compensatory damages.

B.  For statutory damages

C.  For punitive damages.

D.  For reasonable attorney fees and costs of suit pursuant NJSA 34:11-4.1, et. seq.

E.  For an order requiring defendants to purge all of plaintiff's accumulated disciplinary units from her permanent employment file.

F.  For such other and further relief as the court may deem just and equitable.

## **JURY DEMAND**

Plaintiff, Deborah Ehling, demands trial of her causes of action herein before a jury.

RAMP & PISANI, LLP
60 Westervelt Avenue
P.O. Box 249
Tenafly, New Jersey  07670
fred@rampandpisani.com
Attorneys for Plaintiff, Deborah Ehling

Dated: August 18, 2011                    s/ Fred J. Pisani_____
                                         By:  Fred J. Pisani, Esq.

RAMP & PISANI, LLP
60 Westervelt Avenue
P.O. Box 249
Tenafly, New Jersey 07670
(201)567-8877
Attorney for Plaintiff,
Deborah Ehling

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

DEBORAH EHLING,                        Hon. William J. Martini, U.S.D.J.
                                          Hon. Mark Falk, U.S.M.J.

            Plaintiff,                   Civil Action No. 2:11-cv-03305-WJM-MF

-v-                                     CERTIFICATION OF SERVICE

MONMOUTH-OCEAN HOSPITAL
SERVICE CORP., d/b/a MONOC,
VINCENT ROBBINS, individually,
And STACY QUAGLIANA, individually

            Defendants.

_____

I, Fred J. Pisani, Esq., of full age, do hereby certify as follows:

1.   I am an attorney law of the state of New Jersey and a member of the law firm of

Ramp & Pisani, LLP, attorneys for plaintiff, Deborah Ehling, in connection with the above

referenced matter.  I am fully familiar with the facts and circumstances of this case.

2.   Pursuant to Rule 15 (a) (1) (B), plaintiff hereby files her First Amended Complaint

and Jury Demand.

3.   On August 18, 2011, the within First Amended Complaint and Jury Demand was

electronically filed.

4.  A copy of the Plaintiff's First Amended Complaint and Jury Demand was served on defendants' counsel, M. Elizabeth Duffy, Esq., of Daly, Lamastra & Cunningham, by electronic means,  in accordance with Rule 5(b) (2) (D).

I certify that foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment for contempt of court.

RAMP & PISANI, LLP
60 Westervelt Avenue
P.O. Box 249
Tenafly, New Jersey 07670
(201)567-8877
Attorneys for Plaintiff


Date: August 18 , 2011            BY: /s/ Fred J Pisani
                                       FRED J. PISANI, ESQ.